Filed 3/27/26  P. v. Dean CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY LAMAR DEAN,<br><br>    Defendant and Appellant. | C104015<br><br>(Super. Ct. No. STK-CR-FE-1993-6815) |

Defendant Anthony Lamar Dean has served more than 30 years in prison after a jury convicted him of murder with a special circumstance and second degree robbery. After the Legislature reformed the felony-murder rule, Dean filed a petition for resentencing pursuant to Penal Code section 1172.6, which the trial court denied.  We reversed the trial court's denial and remanded with directions to vacate the murder conviction and resentence Dean.  On resentencing, the trial court imposed a sentence of three years on the robbery conviction and imposed two years of parole.  Dean appeals, arguing that the imposition of parole was an abuse of discretion.  We affirm.

1

FACTS AND PROCEEDINGS

A detailed recitation of the facts underlying Dean's convictions is unnecessary to our resolution of the claims on appeal. We summarize the pertinent facts from our prior unpublished opinion in *People v. Dean* (Apr. 24, 2025, C098126) (*Dean*).

"In November 1992, a 20-year-old man (victim) cashed his paycheck and went to buy beer at a liquor store. Because he was underage, victim asked defendant and codefendant to buy the beer for him. Defendant, who 'needed some money,' and codefendant saw the cash in victim's wallet and decided to rob him. During the robbery, one of the perpetrators shot victim. Both defendant and codefendant fled. Victim died from a single .32 caliber gunshot wound to the chest. Fingerprints from both defendant and codefendant were found at the scene." (*Dean*, *supra*, C098126.)

"After the shooting, defendant's friend . . . was in a car with defendant and codefendant and overheard defendant ask codefendant why codefendant shot victim when all he had to do was get the money. Codefendant said he had to shoot victim so victim would not get the gun and shoot him. Defendant thought he saw more in victim's wallet than codefendant said he took, and codefendant thought he should get more because he shot victim and defendant ran away. Defendant said he ran away because he saw victim knock the gun out of codefendant's hand. . . . [¶] . . . [¶] At trial, defendant's mother provided a recording of codefendant admitting he robbed and shot victim." (*Dean, supra*, C098126.)

A jury convicted Dean of murder (Pen. Code, § 187)[1] and second degree robbery (§ 211) and found true the special circumstance allegation of felony murder (§ 190.2). The jury was unable to reach a finding on whether Dean personally used a firearm in the commission of both crimes (§ 12022.5), and the court struck those allegations. The trial

---

[1]     Undesignated statutory references are to the Penal Code.

court sentenced Dean to life without parole on the murder conviction and three concurrent years on the robbery conviction. After Dean appealed, we affirmed his conviction and modified his sentence to stay the three-year robbery term.

In 2018, the Legislature reformed the felony-murder rule, and Dean petitioned for resentencing. The trial court denied Dean's petition on the grounds that he had been a major participant in the underlying robbery who acted with reckless indifference to human life. In making that determination, the trial court found Dean's postrobbery conduct significant, including running away after the shooting.

We reversed the trial court's denial of Dean's petition, concluding that the evidence was insufficient to support that Dean's participation in the shooting exhibited a reckless indifference to human life. As relevant here, in reversing the denial of Dean's petition, we determined the evidence showed Dean "ran away before the murder," meaning he could not have been "present to intervene with codefendant's later use of lethal force." (*Dean, supra*, C098126.) We thus remanded with directions to vacate Dean's murder conviction and resentence him on the remaining robbery conviction.

The trial court held a resentencing hearing in June 2025. Prior to the hearing, Dean filed a resentencing memo in which he contended that given his almost 33 years in custody, the trial court should exercise its discretion and not order he be subjected to parole supervision. Dean also attached letters of support and documentation of his programming in prison, which he contended showed his rehabilitation. Finally, he argued that parole restrictions would hinder his reintegration into society because his family and job offers were in Las Vegas.

The People conceded that Dean had about 31 years of custodial credits and thus any sentence on robbery would result in a sentence of time served, but they requested the court place Dean on two years' parole. The People further requested the three-year middle term sentence on the robbery, arguing, among other things, that Dean "should have stayed there and helped. He should have shown some remorse, but he has shown

3

zero remorse. [¶] He went and did everything he could to hide the fact that he was involved. Evidence was shown that he was the shooter, I'm not allowed to argue that, but he did say it." After the court sustained Dean's objection to the People's characterization of the offense, the People continued, "At the very least when he ran up and said he was the shooter, he adopted the behavior of his codefendant. He did not distance himself. [¶] So based on his callousness and the cruelty which would have been exhibited under a finding, under the Rules of Court, Section 1, the People would ask for the middle term of robbery and the two years of parole." The People also argued that parole was intended, at least in part, to help rehabilitate individuals and help them transition to life outside prison.

Dean did not object to the middle term sentence. However, defense counsel argued the court should not impose parole because it served no purpose; Dean had credit for 31 years in prison; his family and job offer were in Las Vegas and any interstate transfer would be subject to delay; and Dean was not a danger to society, shown by his age and conduct in prison. Defense counsel also reiterated prior arguments that the court should offset any term of parole with Dean's custody credits and asserted the People had provided no facts showing why parole should be imposed.

After hearing from the victim's family, the court stated that following remand, it had no "ability to change anything in the remittitur or make any other decisions. [¶] The remittitur says I have to resentence." The court noted that the low, middle, and upper term sentences on the robbery conviction were two, three, and five years, respectively, but that Dean had already served the maximum amount of time that could be served on the robbery conviction. Continuing, the court stated: "But with regard to what term it will be, under subsequent changes in the law, I believe the defendant was under 26 at the time of this offense, so under 1385 there is a presumption of low term." The court noted that it could not impose the upper term without a finding of fact by the jury or the court, or Dean admitting an aggravating factor.

4

With respect to whether the court should impose a low or middle term sentence, the court explained: "There were people who testified and I believe one of the people—well, there was a statement in evidence. At that time, I did read that entire transcript from the trial and there were statements in evidence that the defendant's cousin said he saw the defendant shoot. There was a statement by a woman, and I don't remember her name, who said the defendant told her he shot.

"But there were also statements where the defendant allegedly said to [codefendant], 'Why did you shoot?' And then another statement by another person, who I believe may have been another cousin of the defendant, who tried to record [codefendant], and in fact I believe did record [codefendant] in statements he made that implicated himself, [codefendant].

"The Court looked at that at the time of the 1172.6 proceedings and made the determination that the Court made and now the Third District Court of Appeal has made a different determination and the Court, like I said, is bound to follow what the Third District Court of Appeal says."

The court noted that Dean had not objected to a three-year term, and stated: "There have been statements by family members that pointed out a factor which the Court considers, that the defendant, if he was not the shooter, did not call for help, did not assist, and those are one of the factors that the Court can consider, remorse at the time. [¶] And I'm not going to go through the facts of this case, because like I said I'm bound to follow the Third District Court of Appeal. [¶] But in looking at the facts of this case, as I read them, I do think that midterm is appropriate, and I am going to impose the midterm of three years on the violation of Penal Code Section 211. [¶] Normally, I would go through and I'm looking at what I would normally go through in the sentencing script to talk about whether probation is appropriate and the purposes of probation. But like I said it's not a resentencing and we're well past that point."

5

After noting Dean had 11,710 total days of credit, the trial court stated it "is going to place the defendant on parole for two years as allowed by Penal Code 1172.6.  Parole is a period of adjustment and the Court thinks that is appropriate.  So he will be placed on a period of parole for two years.  He is time served, however, and then parole would start."

Dean timely appealed.

DISCUSSION

Before us on appeal, Dean does not challenge the trial court's imposition of the middle term sentence.  Rather, Dean argues that the trial court abused its discretion by placing him on parole.

We review the trial court's sentencing decision for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." '  [Citations.]  Second, a ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " '  [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)  "Even if a trial court has stated both proper and improper reasons for a sentence choice, 'a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' "  (*People v. Jones* (2009) 178 Cal.App.4th 853, 861.)

6

Dean asserts the trial court's imposition of parole was an abuse of discretion because (1) the trial court believed Dean was present and unwilling to assist the victim, notwithstanding our prior determination that Dean ran from the scene; (2) the trial court did not understand Dean's right to a full resentencing on remand; (3) the trial court applied the wrong statute in resentencing him to the middle term and did not consider whether to impose probation; and (4) a term of parole was unsupported by the evidence. We address these issues in turn.

Section 1172.6, subdivision (h) provides that "A person who is resentenced pursuant to this section shall be given credit for time served. The judge may order the petitioner to be subject to parole supervision for up to two years following the completion of the sentence."

Initially we note, as the trial court did, that Dean did not object to the imposition of the three-year middle term sentence. We also note that he did not argue for probation at the resentencing hearing. Nor does he now appeal the imposition of that sentence. Dean's contentions on appeal are focused on the trial court's discretionary decision to impose parole.

Dean first contends that in exercising its discretion to impose a period of parole, the trial court impermissibly relied on a fact that Dean was present during the shooting and unwilling to assist the victim following the shooting, despite this court's determination that Dean fled before the shooting occurred. The People contend that any error in the trial court's reliance on this fact did not inform the court's decision on whether to impose a period of parole. We agree with the People. The trial court's comments that Dean did not call for help or render aid to the victim appear to have been made in the context of determining whether to impose a lower or middle term sentence and not in regard to whether to impose a period of parole. Dean fails to convince us otherwise. Thus, we find no error in the court's comments applicable to the issue he now appeals.

7

Dean next argues that the trial court erred because it did not know that he was entitled to a full resentencing hearing, including a "full reconsideration of all sentencing matters." Yet Dean does not tell us what sentencing matter he was deprived of litigating or how the trial court's alleged failure to understand its discretion impacted the court's decision to impose parole. Having failed to provide any legal analysis of this issue, we deem the issue waived. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Dean next argues the trial court applied the wrong statute when sentencing him to the middle term. Again, however, Dean provides no analysis of how this error impacted him. We again find the issue waived.

Even assuming Dean's arguments regarding the alleged errors in connection with his three-year sentence were not waived, there is no indication that these alleged errors had any effect on the trial court's imposition of parole. (See, e.g., *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [reversal not required where the record clearly indicates the trial court would have reached the same conclusion even if it had been aware that it had such discretion].) Notably, the court stated that parole was warranted as "a period of adjustment," and it does not appear that resolving any misconception regarding the circumstances of the original offense or the trial court's authority on resentencing would have any effect on its determination that parole would aid Dean in adjusting to life outside of prison after three decades. (See, e.g., *People v. Jones, supra*, 178 Cal.App.4th at p. 861.)

Lastly, Dean argues that the trial court abused its discretion in imposing parole because the necessity of parole was unsupported by the evidence. We acknowledge the trial court could have reasonably accepted Dean's arguments and forgone any parole period or applied his excess custody credits to the term of parole. Nevertheless, Dean has

8

not shown the trial court's rejection of those arguments was an abuse of discretion.  One objective of parole is to "provide 'supervision and counseling, to assist in the parolee's transition from imprisonment to discharge and reintegration into society.' "  (*People v. Wilson* (2020) 53 Cal.App.5th 42, 50-51; see also *In re Roberts* (2005) 36 Cal.4th 575, 590 [parole "assists in returning the prisoner to society while simultaneously affording some measure of continuing protection to society"].)  The People correctly noted this objective at sentencing, which the trial court acknowledged when it ordered parole, stating:  "Parole is a period of adjustment and the Court thinks that is appropriate."  Notwithstanding Dean's efforts at rehabilitation in prison and his family support and postincarceration job opportunities out of state, the trial court could have reasonably concluded Dean would benefit from parole supervision and counseling after more than 30 years in custody.  We find no abuse of discretion and decline to strike the term of parole.

DISPOSITION

The judgment is affirmed.

/s/
EARL, P. J.

We concur:

/s/
HULL, J.

/s/
MESIWALA, J.

9